Yeah. Yeah. Yeah. Yeah. Yeah. Do we have any other questions? Speaker? Yes, good morning Your Honours. I'm H.J. Spegel, I'm here representing Chesapeake Marine Tours and I'll refer to them as Chief Watermark, which is their DBA. I'd like to briefly summarize the arguments that I'd like to make today. The first one is that the Trademark Trial and Appeal Board committed a legal error by using the wrong date range for consideration of evidence in seeking to determine whether the acquired distinctiveness of the Annapolis Tours mark had been successfully rebutted by Alcatraz. Secondly, the Trademark Trial and Appeal Board, for reasons unexplainable and I imagine perhaps inadvertently, didn't consider the most important evidence we presented when they first decided that the prima facie case for acquired distinctiveness of the registration had been rebutted, and then the inquiry moved to the question of whether Alcatraz had proven by a preponderance of the evidence that the mark lacked acquired distinctiveness. And the third thing that I'd like to talk about today is what I believe is the clear error of the Trademark Trial and Appeal Board in its determination that the mark was highly descriptive. I have a quick housekeeping question on how the events transpired below. Yes, sir. Was there summary judgment motions or anything like that? I'm not familiar with how these proceedings work, maybe I should be, but was it more you supplying your evidence, the other side supplying their evidence, then there's some kind of oral argument, and then the TTAB writes one final decision? Yes, Your Honor. There was a summary judgment motion that was filed by Alcatraz and it was denied, none of the aspects of the summary judgment motion, that was fairly early in the proceedings. And then we take testimony on the peculiar nature of the Trademark Trial and Appeal Board proceedings is that it's not in a court, it's by deposition, and once all of the testimony was taken, all of the evidence was put in for the record, we did have oral argument before a three-judge panel of the Trademark Trial and Appeal Board, and about one year later they came down with their decision. Right, so the TTAB, it issued an opinion on whether a prima facie case was made at the same time that it reached its ultimate conclusion as to whether or not there was enough here for secondary meaning, is that right? That's correct, Your Honor, there were no preliminary determinations prior to the final decision of the Trademark Trial and Appeal Board on all of the issues that were raised, and that includes objections to introduction of evidence and everything else that was involved in it as well. This first issue, as Your Honors I'm sure know, the Cold War Museum case is a seminal case on the question of the issue of a mark registered under Section 2F of the Lanham Act. Why don't you discuss whether TTAB accurately applied the Cold War Museum's burden shifting? Okay, thank you, Your Honor. The burden shifting issue goes this way. If one obtains a registration under Section 2F, one is not only entitled to the presumption of validity, but to the presumption of acquired distinctiveness. The entity that intends to try to cancel the registration has to show by a preponderance of the evidence that they have succeeded in showing that the mark did not have acquired distinctiveness as of the time that the registration was granted. The Cold War Museum case, frankly, could use a little bit of clarification because in its explanation of what evidence one needs to present in order to rebut the prima facie case for acquired distinctiveness of a registration, it isn't crystal clear as to the date cutoff of what evidence the cancellation petitioner can present. The NEAPCO case, which is not a Federal Circuit case, but rather is a Trademark Toronto Appeal Board case from, I believe, about 1989, does say that the cutoff should be as of the date of registration. But again, the Cold War Museum case does not... Can I just ask you, what is there in the statute that indicates that a registration should remain in effect even if the mark registered has come to be highly descriptive by the time of the challenge? Why is that a sensible result or something that the language of the statute says ought to be produced? My understanding of the statute, Section 2F, I gather, is what Your Honor is talking about. Tell me anything in the statute that says registration should continue for a mark that, by the time of the challenge, has come to be highly descriptive and no longer indicative through a once-secondary meaning, a once-acquired distinctiveness, was originally registered. Is Your Honor talking about at what point in time could that possibly... That's what you're talking about, and I'm trying to understand why the result you're urging makes sense, either period and also maybe something the statute says, this is compelled even if it doesn't make sense. There is a section of the Lanham Act, I believe it's Section 14, although I wouldn't want to be held to it, which gives a five-year cutoff from the date of registration after which a challenge of this type can no longer be made. In this particular case, we were not to the five-year period, and so a challenge based upon the validity and the acquired distinctiveness of the mark was fair game for Alcatraz to try to pursue. Okay, so at least during this five-year period before maybe whatever the scope of the five-year provision is, maybe let's assume that that says even if the conditions under which the So, within the five-year period, why does the statute sensibly say or say at all that a registration for a now highly descriptive mark should remain? I don't believe the statute says that, Your Honor, but the Colborne Museum case puts the burden on the challenger to the acquired distinctiveness of the registration to demonstrate by a preponderance of the evidence that, in fact, it no longer does have acquired distinctiveness, and that is the crux of the issue here. And then the question becomes, what evidence can the challenger present in order to try to demonstrate that the mark no longer has acquired distinctiveness? And our position is that the cancellation… Well, additional evidence or argument, I think, is the phrase that you use. Yes, that's correct, Your Honor. The time limit is the date of registration, and while the Colborne Museum is not clear about that, then the APCO case is, and in fact was cited in the Lovely Skin case, which was our supplemental citation from the Eighth Circuit. They cited the APCO case for that reason. It perhaps would be helpful if this Court would clarify that issue. The Court, I mean, the Trademark Colonel Appeal Board, considered all of the evidence presented by Alcatraz and didn't limit itself to evidence through the date of registration, and so we believe that that is clear error. I'd like to briefly talk also about this second issue concerning Exhibits 2 through 5. Exhibits 2 through 5 were the heart of Watermark's case concerning demonstrating, in the event the Trademark Colonel Appeal Board indicated that the acquired distinctiveness of the mark was rebutted, that was our prime evidence to show that, in fact, Alcatraz could not prove, by a preponderance of the evidence, that the mark lacked acquired distinctiveness at the time of trial. And, amazingly, the Trademark Colonel Appeal Board, perhaps of inadvertence, completely ignored Exhibits 2 through 5. Exhibits 2 and 3 were voluminous evidence, examples of use of the mark on a number of advertising pieces, on all sorts of publications, all sorts of things, and Exhibits 4 and 5 were the evidence of the ordering of tens of thousands of those pieces of advertising copy. In trying to weigh whether Alcatraz had reached its preponderance of the evidence standard, that wasn't weighed, and as such is clear error. And the evidence that was presented on their side of the ledger to try to prove a lack of acquired distinctiveness, which they were obligated to do under the Cold War Museum case, no consumer witnesses. Their expert witness was not permitted to have their testimony admitted on actual consumer perception. A total of 24 LexisNexis articles from a period of 28 years, less than one a year, and several of which actually referred to a watermark. And so this was a situation in which we believe if the Board had properly considered all the evidence that was presented, and the record's clear that they did have that evidence of record, we believe that decision would have been different. I see, Your Honor, I'm going to continue on for a minute. I want to throw a question at you. Okay. Thank you. The burden of persuasion never shifts. The burden of production does, you'd agree with that? That's correct, Your Honor. The burden of persuasion by preponderance of the evidence is always with Alcatraz. The burden of production arises upon the Trademark Trial and Appeal Board determining that Alcatraz had succeeded in rebutting the prima facie case of acquired distinctiveness as it was at the time of registration. Is it right that your client or your client's predecessor didn't use the phrase, Anapolis Tours, as a mark on its website before November 2004? It's absolutely false, and the evidence of record clearly shows it all, all the way going back to as long as websites were being used. As Your Honor knows, I don't think websites were that prevalent when this mark started being used, but even their evidence, I know that I stated in our reply brief, where they argued that it hadn't been used. In fact, the pieces of evidence they presented showed that it had been, including using a web address, anapolis-tours.com, to access the website. I mean, it was as clear as could be. The third issue, and I've discussed it in other arguments today, has to do with this business of finding that the mark was highly descriptive. And again, no witnesses, no expert testimony, virtually zero documents that were relevant to the issue, and I just want to conclude while retaining time for rebuttal, that the Lovely Skin case is on all fours with our argument concerning the question of, when you're looking to see if there's third-party evidence that would go against substantial exclusivity of the use of a mark, in that case, just as in this case, the Eighth Circuit found that there was insufficient evidence of the pervasiveness of the use. And that's the case here, as opposed to our situation in which we put forth Exhibits 2 through 5, which were not considered by the Trademark Trial and Appeal Board in rendering their decision, showing extensive use of the mark and extensive hoarding of tens of thousands of pieces. There are thousands of documents in this record, Your Honors, and I don't recall a single page in which Alcatraz explained the pervasiveness of use. Not a single document showing how many pieces of advertising copy were ordered by these third parties, all of whom, by the way, were competitors of Watermark, many of whom, as the record clearly shows, had access to Grind. I'll reserve my remaining time for rebuttal. Thank you very much. Good morning, Your Honors. I'm Michelle Tide, and I represent the Appellee Alcatraz Media. I would submit that the Board did properly follow the Cold War Museum case and the burden shifting established by this Court in the Cold War Museum case in making this determination based on the substantial evidence of record. They first determined that Alcatraz did meet… They say in the decision, they say, in accordance with Cold War Museum, the burden shifts to respondent to now prove acquired distinctiveness. Correct. That was after they determined that Alcatraz had met its prima facie case of rebutting the presumption of acquired distinctiveness. So you believe that Cold War Museum does burden shifting? Based on, I believe, well, based on production, based on evidence to be produced. It's not so much burden shifting as it is based on the evidence… They say burden shifting. In the Cold War case or in the Board's? In the TTAB. In the TTAB. I think ultimately what they're referring to, though, is the production. Those are two different things, though, aren't they? They are, yes. I believe that they use the word burden as semantics and not trying to make a legal distinction between burden versus production. Far be it from me to be anti-semantic. Okay. Where did the TTAB actually do a highly descriptiveness analysis? What I saw was the TTAB making a quick reference in its opinion that this mark is highly descriptive, and it said, see what we said in our genericness section. And then when I read the genericness section, I didn't quite see anything in there that really highlighted for me the TTAB declaring, after a lot of analysis, we're not finding this mark generic. But, wow, it's this close to being generic for all the great reasons we just described, why this thing, while not generic, is almost generic, but we do conclude it's highly descriptive. There seems to be a gap in the analysis. Where do you find it? I think it was in the genericness analysis where they determined that there's a fine line, I think, between being highly descriptive and being generic. And I think in making the determination that, in looking at the evidence they looked at, for example, the sampling of newspaper articles and third-party publications using anaphylacturas and variations descriptively, I think based on such evidence, the dictionary definitions that were supported, the testimony of the witnesses, Here's my concern. It's at page 36 of the opinion. This seems to be their sum-up sentence in the middle of it. However, when considered in conjunction with the testimony of respondents and competitors, these uses result in, at best, a mixed record of use of the phrase, both generically and as part of what appear to be trademarks or trade names. This ambiguous evidence thus fails to establish that the primary significance of anaphylacturas to the relevant public is guided toward services of cities rather than as guided toward services of cities provided by a particular entity. So, when the TTAB itself is using words like mixed record or ambiguous, that doesn't jump out to me that the TTAB is at the same time saying, oh, but this mark is very highly descriptive. I believe that their opinion, and based on, if you've looked at the volume of record, that they clearly, and a lot of their looking at the evidence was in the initial part of the period, where they go through all the objections raised to the evidence by Watermark, and then there they, I think, discussed more, I think it was the first half of the opinion, discussed all the evidence. And I think that was really discussion of the evidence that was then more summarized by the Board in its decisions under the genericness and the descriptiveness argument. But, regardless, based on this Court's decision in Yamaha and the Colborne Museum, descriptiveness is not an issue in this case. A 2F registration is presumed descriptive. So that is not an issue in the case. This case is all about whether the mark had acquired distinctiveness and whether Alcatraz met its promisation case of rebutting the presumption of acquired distinctiveness, which I think it did by presenting evidence. Alcatraz never contended that Watermark never used the mark. What we argued is that their use of the mark was not continuous and it was not substantially exclusive. And given that this is a mark based, the registration was based on acquired distinctiveness, such evidence rebutted a finding, the promisation case of presumed acquired distinctiveness. But that's not quite the road map that the TTAB used, right? The TTAB seems to say, this mark is highly descriptive, see our ambiguous genericness discussion, and let's look at the actual evidence of secondary meaning that was supplied back during the original prosecution. When we slap those two things together, there's a prima facie case burden shift now. It didn't go into this analysis that you're now talking about, which is to what extent did your side put on enough of a case that whatever use of the mark there was being done by the other side, it wasn't substantial or continuous or exclusive. It seemed to wait until later, after the burden had already shifted. Am I understanding the TTAB decision correctly? I don't think so. I think that the board clearly found that the evidence that rebutted Watermark's claim of continuous use since 1993 was sufficient to establish Alcatraz's prima facie case, and the board did say that in their opinion. So I think they did look at the evidence of record to establish that Alcatraz did need its prima facie case for rebutting the presumption of acquired distinctiveness. Did it look at the exhibits two through five? I believe it did look at those exhibits. And in that discussion? Well, I don't think it was necessarily in the decision itself, because like I said, the first half of the decision, they went through all the evidence submitted in the case in connection with numerous objections that have been made. And I think that deals with a lot of evidence. Including exhibits two through five? I'm sorry? Including exhibits two through five? I don't recall specifically about those exhibits. But even though the board in its decision did not specifically reference the trial exhibits two through five, as Mr. Spiegel pointed out, those exhibits are examples of brochures and advertisements where Watermark used the term Annapolis Tours. And the board in its decision did say that such evidence was not persuasive of acquired distinctiveness, that such evidence was merely probative of the efforts that Watermark utilized in trying to achieve acquired distinctiveness. But the extent and the quantity, it said the extent and quantity, which goes to those exhibits because Mr. Spiegel said there were over 10,000 brochures ordered. The board specifically said the extent and quantity of the advertisement was not probative of acquired distinctiveness. You have to look at their effectiveness in altering the descriptive mind and the purchasing public's perception. And so although they did not specifically reference those trial exhibits, I think that they did consider them by stating that the efforts Watermark made in advertising the mark were not probative of the effectiveness of that descriptive term achieving acquired distinctiveness. I'm sorry. I thought the debate was more about between the two sides, whether there was substantial exclusive and continuous use. Not so much a debate over what were consumers actually perceiving. And then your evidence was, well, there's a former employee named Ms. Dennis who can testify that they were not using it exclusively or continuously. And to the contrary, the other side is coming forward and saying, well, look at all these tens of thousands of brochures that show us pervasively, openly, notoriously using this mark as a mark. So isn't that why it's kind of pivotal to weigh that evidence against the evidence of people like Ms. Dennis? I think it is important, yes, to weigh that evidence. But if you look at what it means to acquire secondary meaning, it is essentially, the Trademark Act requires, that essentially the descriptive mark has to have become identified as a source identifier in the mind of the purchasing public. And the statute, I believe this question was asked earlier, Mr. Stegall, there is nothing in the statute, Congress did not, in the QF Statute of the Trademark Act, Congress put nothing in there about what type of evidence was required to establish acquired distinctiveness. And what they did is they decided to leave the amount of such evidence necessary up to the USPTO and to the court to decide because they realized the circumstances of each case would differ. And there is a long history, I think, of cases from the TTAB and also cases, I think, such as the Omaha case from this court in which the court basically says, you know, the amount of evidence needed to establish acquired distinctiveness does vary based on the circumstances of each case. And I think what Alcatraz did is, they used the evidence showing lack of usage to help establish its prime and face of case. And once it established its prime and face of case, then what Alcatraz did was they looked at the evidence that was submitted by Watermark in support of its registration and its claim of acquired distinctiveness. And again, we submitted evidence that rebutted, this showed not, you know, persuasive, I mean pervasive non-usage of the mark. You had the testimony of Mrs. Deney, a tour guide who testified she never interacted with the purchasing public using the Mark Annapolis tours. Watermark questions her credibility, but they could have called a tour guide to testify how they interacted with the purchasing public, and they did not do so. So the only record of evidence we have from a tour guide who interacted with the purchasing public is the testimony of Mrs. Deney, as well as the tour guide manual, which was the employee manual for the tour guides on how to present the tours and interact with the public, and that was devoid of any reference to the Mark Annapolis tours. And I think as the board found, that is circumstantial evidence of consumer perception, because at the end of the day, the issue of acquired distinctiveness is an issue of fact. And the issue of fact is whether the mark is perceived by the purchasing public as a source identifier for the registrant's goods. What about the website? The website was the mark on the website. It was not prior to 2004, and if you look at Alcatraz Trail Exhibits Identified CCC, it was not used by the predecessor in interest three centuries. It was used in the domain name, but domain names alone are not trademarks. And it was nowhere used within the text of the website as a source identifier. Subsequent to Watermark acquiring the company, there were years in which it was used as a trademark on the website and years that it was not used on the website, and that is all introduced into evidence. So before 2004, when somebody pulled up the webpage, the URL up top would have those words, but nothing in the window. It did, but nothing in the text. It was three centuries tours, three centuries tours of Annapolis, presents walking tours of Annapolis, historic tours of Annapolis, and such. It was not used as a source identifier within the website. It was used descriptively. I also just wanted to quickly, I do not believe there's anything in the case law or the statute that requires that the prima facie evidence all be dated prior to the registration date. I think that doing so would be setting a precedent that a mark could, if the challenger was limited to evidence prior to the registration date, then what is the purpose of the Landon Act allowing you to challenge a mark for up to five years after registration? I think as with abandonment claims and lack of distinctiveness claims, it could have lack of distinctiveness. In fact, in the NEOP case that Mr. Spiegel relies on there, I think the board actually said if it was descriptive either at the time of registration, it could not have registered it as to have marked, but also if at the time it's being challenged, it does not have the required distinctiveness, it still has to be canceled because at either time it is not a valid trademark under 2F of the Trademark Act. But regardless, the evidence in this case, both dated prior to the registration date and after, is more than sufficient and substantial from which this Court can conclude that the board reasonably concluded that Alcatraz Med is ultimate burden of proof that this mark lacks the requisite and requires distinctiveness to sustain its registration. And based on the evidence of record, which I don't think the board clearly erred in weighing and determining, the board's decision below has to be sustained canceling the registration. Any other questions? All right, thank you very much, Your Honors. Thank you. Thank you. I hope I don't drop anything here now that I've got this all reorganized. I would like to read from page 44 of the board's decision. Given the highly descriptive nature of registrants, mark continuous use alone since 1992 would not be sufficient to establish required distinctiveness. Aside from that, we find problematic the documentary evidence upon which Respondent bases its claim of continuous use. Respondent relies heavily on its trial exhibits 2-5, which consist of printouts from the websites referenced above purporting to show service mark usage and promotion of its Mark Annapolis tours. Because these materials were printed from the Internet on June 11, 2011, they have no probative value in showing continuous use prior to that date and minimal value regarding Respondent's promotional efforts. There can be no question, Your Honors, that they were referring to Exhibits 2-5 from our Notice of Reliance, not Trial Exhibits 2-5, which were voluminously detailed in Appendix 1 to our trial brief at the TTAB on pages Roman numeral III to Roman numeral IX. They were clearly in the record. The Trademark Toronto Appeal Board acknowledged as such on page 9 of their decision. And that was that. Concerning the evidence of genericness, Judge Chen, you were correct in noting that all they did was refer back to all the genericness evidence from pages 33 to 36, which went from 1983 to the date of trial in 2011, well beyond the cutoff of the date of registration. But isn't your opposing counsel right about her reading of the NEPCO cases? You can judge things like descriptiveness from the time of registration, but you can also judge it from the present day at the time of the proceedings. I disagree with that, and I will say that we made an argument in that regard in our reply brief, which I think is thorough and rebuts that issue thoroughly. I know my time is up, and I just wanted to close by saying that we ask that this Court reverse the decision of the Trademark Toronto Appeal Board and direct them to dismiss the petition to counsel. Thank you very much for your time and attention. Thank you, counsel.